UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES CARREKER, #243649,

       Petitioner,

v.                                        CASE NO. 2:11-cv-15577
                                         HONORABLE NANCY G. EDMUNDS

KENNETH ROMANOWSKI,

       Respondent.
_____/

**OPINION AND ORDER DENYING THE HABEAS CORPUS PETITION,
GRANTING IN PART A CERTIFICATE OF APPEALABILITY, AND
GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

**I. INTRODUCTION**

Petitioner James Carreker has filed a *pro se* petition for the writ of habeas corpus under 28 U.S.C. § 2254. The habeas petition challenges Petitioner's conviction and sentence of twelve to twenty years in prison for first-degree home invasion, Mich. Comp. Laws § 750.110a(2). Petitioner alleges that (1) the evidence at trial was not sufficient to support his conviction, (2) the sentencing judge did not know the law relative to sentencing in criminal cases, and (3) he is entitled to credit for time spent in jail before his sentencing.

Respondent Kenneth Romanowski argues in an answer to the habeas petition filed through counsel that the state court's decision on Petitioner's first claim was a reasonable application of Supreme Court precedent, that Petitioner's second claim is procedurally defaulted, and that Petitioner's third claim is not cognizable on habeas review. The Court agrees with Respondent that Petitioner is not entitled to habeas corpus relief. Therefore, the habeas petition is denied. A procedural history and discussion follow.

## II. BACKGROUND

**A. The Trial Testimony and Judgment**

Petitioner was charged with first-degree home invasion as a result of a breaking and entering at Korey Hall's home on Canterbury Street in Detroit. At Petitioner's bench trial in Wayne County Circuit Court, Korey testified that, between 2:00 and 2:30 a.m. on August 2, 2008, his home alarm sounded. He ran downstairs and noticed that the couch in front of a window at the back of the house had been pushed forward and the drapes were hanging over the couch. The screen had been cut and the window was open slightly. He saw a shadow pass outside the window. After running upstairs to put on some shorts, he ran back downstairs and exited the back door of his house. He heard a rustling noise in the bushes as though someone were moving the branches. By then, his father, who lived next door, had come outside. His father pointed toward the side of the house, and then the police drove up. After Korey and his father pointed toward Cambridge Street, the officers left, and he and his father proceeded to get in Korey's vehicle. Another police car then arrived, and after talking briefly to those officers, he and his father drove toward Cambridge Street. Within a block of his house, he noticed that the first set of officers had apprehended someone. The suspect was sweating profusely, and he had twigs on him. Korey Hall identified Petitioner at trial as the person whom the police apprehended a block from his home early on August 2, 2008. He admitted, however, that he did not see anyone in the back of his house or in his yard that night.

Korey's father, Hollis Hall, testified that he got up and went outside about 2:00 or 2:30 a.m. on August 2, 2008, because his daughter got a phone call saying there was a break-in next door. He saw a man run between his son's house and the vacant house next

door. The man ran down the street, and when the police arrived, he (Hollis Hall) pointed in the direction where the man had run. He and Korey then got in a car with the intention of circling the street. An officer approached them and said that the other officers had caught someone around the block. He informed the police that the person they had apprehended was the same person that he had seen running between the houses.

At trial, Hollis Hall stated that he had not noticed whether the suspect had one or two hands, but he identified Petitioner as the person whom he saw run between the houses on August 2, 2008. He claimed that Petitioner's height, complexion, and weight fit the description of the man he saw back on August 2, 2008.

Police Officer Alvin Cherry testified that, on August 2, 2008, he was dispatched to a house on Canterbury to assist with a breaking and entering in progress. After speaking with two men at that location, he proceeded to Cambridge and Parkside Streets, about forty feet away from the residence in question. He observed Petitioner walking down the street. When he shined a flashlight on Petitioner, Petitioner dropped a claw hammer onto the ground. Petitioner's shirt was wet, and he had grass on the back of it. The complainant and the witness at the house then drove up and identified Petitioner as the man who had tried to break into the complainant's house on Canterbury. Petitioner informed Officer Cherry that his name was James Green, and although he had been walking toward Seven Mile Road, he said that he was going to Eight Mile Road.

Officer Andre Guyton was Officer Cherry's partner on the night of the home invasion, and his trial testimony was similar to Officer Cherry's testimony. Officer Detrick Mott testified that he took a statement from Petitioner about noon on August 2, 2008. After advising Petitioner of his constitutional rights, Petitioner admitted that he had been at the

complainant's house, that he had jumped over the fence there, and that he heard the alarm. He admitted that he did not have permission to be at the house, but he denied breaking into the house. He said that someone else was with him, that his man went into the house, and that he (Petitioner) was the lookout. Petitioner claimed that he ran away when the alarm went off.

Although Petitioner denied being threatened or promised anything for his statement, Officer Mott mistakenly wrote on his interrogation report that Petitioner had responded affirmatively when asked whether he was threatened or promised something to make a statement. Petitioner signed each page of his statement and he did not make any corrections to it.

Petitioner did not testify or present any witnesses. Defense counsel pointed out during closing arguments that Petitioner was not found in possession of anything from the house on Canterbury and that the homeowner got only a fleeting image of someone leaving the house. Defense counsel maintained that, because Petitioner had only one arm, he could not have committed the crime by himself. Defense counsel argued that Petitioner's statement to the police was not reliable and that the trial court should not presume an intent to steal from proof of a breaking. Counsel concluded his argument by stating that, at most, the prosecution had proved a breaking and the crime was home invasion in the third degree. In rebuttal, the prosecutor argued that the facts were not mere coincidences, and for the requisite intent to be present, all that was necessary was a minimum of circumstances.

On January 26, 2009, the trial court found Petitioner guilty, as charged, of first-degree home invasion, Mich. Comp. Laws § 750.110a(2). The trial court gave the following

reasons for its decision:

> I think that the prosecution has proved this case beyond a reasonable doubt.
>
> Furniture was moved in the home, and I don't think that there was any question that he was in the home at the time.
>
> Testimony of the witnesses was credible who testified on behalf [of] the prosecution, and they were such that they proved guilt beyond a reasonable doubt.
>
> There were no discrepancies in the testimony of the witnesses, except for the one issue about the statement where the officer said, yes, and he really meant, no. I think that he clarified that at the time of his testimony, and the Court accepts the testimony of the officer.
>
> So actually, the totality of the circumstances, of the facts of this case, are such that the prosecution has sustained their burden of proof in proving the Defendant guilty beyond a reasonable doubt. And I might also say that I accept the argument of the Prosecutor in support of the decision.

(Trial Tr. Vol. III, 18-19, Jan. 26, 2009.)

**B. The Sentence and Appeal**

On February 10, 2009, the trial judge sentenced Petitioner to imprisonment for twelve to twenty years.[1] The Michigan Court of Appeals affirmed Petitioner's conviction and sentence, but remanded his case to enable the trial court to (1) change the sentencing information report to reflect Petitioner's correct sentencing guidelines range of 51 to 170 months and (2) amend the judgment of sentence to show that Petitioner was sentenced as a fourth habitual offender. *See People v. Carreker*, No. 290501 (Mich. Ct. App. May 18, 2010) (unpublished).

---

[1] The trial court initially stated that the sentence was fourteen to twenty years, but then said that the sentence was twelve to twenty years. The judgment of sentence reads twelve to twenty years.

5

On September 27, 2010, the Michigan Supreme Court remanded Petitioner's case to the trial court to comply with the Court of Appeals judgment and to correct Petitioner's sentencing information report to show that Petitioner was convicted of first-degree home invasion following a bench trial, not a guilty plea. The state supreme court denied leave to appeal in all other respects because it was not persuaded to review the issues. *See People v. Carreker*, 488 Mich. 868;788 N.W.2d 446 (2010) (table).

## C. The Habeas Petition and Responsive Pleading

Petitioner filed his habeas corpus petition on December 21, 2011. His claims are:

I. The evidence at trial was insufficient to sustain [his] conviction for home invasion first degree.

II. [He] is entitled to re-sentencing before another judge because the judge who sentenced him did not know the law relative to sentencing in a criminal case.

III. [He] is entitled to credit for time served in jail awaiting sentencing in this matter.

Respondent claims that Petitioner's second claim is procedurally because the Michigan Court of Appeals reviewed that claim for "plain error." A procedural default is "a critical failure to comply with state procedural law." *Trest v. Cain*, 522 U.S. 87, 89 (1997). It "is not a jurisdictional matter," *id.*, and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003). The Court excuses the alleged procedural default in this case, because Petitioner's claims do not warrant habeas relief, and it is more efficient to proceed directly to the merits of the second claim than to analyze whether the claim is procedurally defaulted.

## III. STANDARD OF REVIEW

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, __ U.S. __, __, 131 S. Ct. 770, 783 (2011). Pursuant to § 2254, the Court may not grant a state prisoner's application for the writ of habeas corpus unless the state court's adjudication of the prisoner's claims on the merits

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., opinion of the Court for Part II).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75

7

(2003)). To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

## IV. DISCUSSION

### A. Sufficiency of the Evidence

Petitioner alleges that the evidence adduced at trial was insufficient to sustain his conviction. He points out that no one saw him inside the complainant's dwelling and he had no items from the complainant's house on him at his arrest. Furthermore, it was dark outside at the time, the complainant got only a fleeting image of someone leaving the location, and even though he has only one arm, no one mentioned that physical deformity when describing the suspect to the police. Petitioner further alleges that he was sick when he made his statement to the police and that his confession was coerced.

#### 1. Clearly Established Federal Law

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). After *Winship*, the critical inquiry on habeas review of the sufficiency of the evidence to support a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (internal citation and footnote omitted) (emphases in original). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* at 319.

"Two layers of deference apply to habeas claims challenging evidentiary sufficiency." *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (citing *Brown v. Konteh*, 567 F.3d 191, 204–05 (6th Cir. 2009)), *cert. denied*, __ U.S. __, 131 S. Ct. 2103 (2011). First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime beyond a reasonable doubt." *Brown v. Konteh*, 567 F.3d at 205 (citing *Jackson v. Virginia*, 443 U.S. at 319) (emphasis in original). Second, if the Court were "to conclude that a rational trier of fact could *not* have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Id.* (emphases in original).

### 2. Elements of the Offense

The *Jackson* standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson v. Virginia*, 443 U.S. at 324 n.16. The Michigan statute on first-degree home invasion reads:

> (2) A person who breaks and enters a dwelling with intent to commit a felony, larceny, or assault in the dwelling, a person who enters a dwelling without permission with intent to commit a felony, larceny, or assault in the dwelling, or a person who breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a felony, larceny, or assault is guilty of home invasion in the first degree if at any time while the person is entering, present in, or exiting the dwelling either of the following circumstances exists:

>   (a) The person is armed with a dangerous weapon.
>
>   (b) Another person is lawfully present in the dwelling.

Mich. Comp. Laws § 750.110a(2).

The Michigan Supreme Court has explained the alternative elements of the offense as follows:

>   Element One: The defendant *either*:
>
>   >   1. breaks and enters a dwelling or
>   >
>   >   2. enters a dwelling without permission.
>
>   Element Two: The defendant *either*:
>
>   >   1. intends when entering to commit a felony, larceny, or assault in the dwelling or
>   >
>   >   2. at any time while entering, present in, or exiting the dwelling commits a felony, larceny, or assault.
>
>   Element Three: While the defendant is entering, present in, or exiting the dwelling, *either*:
>
>   >   1. the defendant is armed with a dangerous weapon or
>   >
>   >   2. another person is lawfully present in the dwelling.

*People v. Wilder*, 485 Mich. 35, 43; 780 N.W.2d 265, 269 (2010) (emphases in original).

To convict a person under an aiding and abetting theory, the prosecution must prove that

>   (1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement.

*People v. Plunkett*, 485 Mich. 50, 61; 780 N.W.2d 280, 286 (2010) (quotation marks

omitted).

### 3. Application

The Michigan Court of Appeals determined that the evidence was sufficient to support Petitioner's conviction, because

> [t]he evidence supported the finding that the victim's home was broken into and entered, as the screen to a window was cut and pulled forward, and the couch just inside that window had been moved away from the window. It was also undisputed that the victim and his wife were in the house when it was broken into. With respect to identity, defendant was found leaving the area of the victim's house, dropped a claw hammer when approached by police, wore clothing similar to that described by a neighbor, and eventually admitted to being at the victim's house standing guard for an unidentified person who broke into the victim's house.

*Carreker*, Mich. Ct. App. No. 290501, at 2. A rational trier of fact could conclude from this evidence and from the additional testimony summarized above that Petitioner broke into and entered the complainant's home without permission and while the complainant was lawfully present in the dwelling.

As for the requisite intent, "[a] factfinder can infer a defendant's intent from his words or from the act, means, or the manner employed to commit the offense. In other words, a defendant's intent can be proved by circumstantial evidence." *People v. Hawkins*, 245 Mich. App. 439, 458; 628 N.W.2d 105, 115 (2001). The trier of fact may "draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia*, 443 U.S. at 319.

Here, a rational trier of fact could reasonably infer from the cut screen and open window at Korey Hall's house and Petitioner's possession of a claw hammer as he walked down the street in the middle of the night that he intended to commit a larceny. His intent was also apparent from the fact that he exhibited a consciousness of guilt. He fled from the Hall residence when the home alarm sounded and he dropped a claw hammer, which

could have been used as a cutting instrument, when the police apprehended him.

To conclude, all three elements of first-degree home invasion ((1) breaking and entering a dwelling, (2) with intent to commit a larceny or other felony, and (3) while another person was lawfully present) were satisfied in this case. And because Petitioner admitted to being at the victim's home, his identity was established. His statement to the police that he was the "lookout" established that, at a minimum, he aided and abetted the crime.

Petitioner argues that his admissions to the police were coerced and the result of his illness at the time. Officer Mott admitted at trial that he checked "Yes" as the answer to a question about whether Petitioner was threatened or promised anything to make his statement. But Officer Mott explained that this was a mistake and that Petitioner actually denied being threatened or promised something to make a statement. Mott himself denied threatening Petitioner or promising him anything to make a statement, and he noted that he corrected his mistake on the interrogation record before Petitioner signed his statement. (Trial Tr. Vol. II, 33-34, 42-44, Jan. 9, 2009.)

As for Petitioner's health, Officer Mott testified at a pretrial hearing on the voluntariness of Petitioner's statement that Petitioner did not say he was not feeling well at the time. (Mot. Hr'g at 13, Oct. 16, 2008.) Petitioner, on the other hand, testified at the hearing that he drank a fifth of whiskey and consumed about a gram of cocaine before his arrest and was still feeling the effects of alcohol and cocaine when he was interrogated. (*Id.* at 21-23.) He also claimed that he was having an asthma attack at the time and was "feeling really bad." (*Id.* at 24.) The judge who presided over the hearing denied Petitioner's motion to suppress his statement after concluding that Petitioner's version of the facts was not credible. (*Id.* at 48.)

At trial, Officer Mott testified that Petitioner did not appear to be under the influence of either alcohol or drugs during his interrogation (Trial Tr. Vol. II, 26, Jan. 9, 2009), and the trial court accepted Officer Mott's testimony. (Trial Tr. Vol. III, 18, Jan. 26, 2009.) The state courts' findings on the credibility of witnesses are entitled to deference, "for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Anderson v. Bessemer City, N.C.,* 470 U.S. 564, 575 (1985).[2]

Furthermore, at trial, Petitioner abandoned his attempt to demonstrate that his medical condition had an impact on his comments during the interrogation. (Trial Tr. Vol. III, 3-4, Jan. 26, 2009.) And a hospital record that Petitioner attached to one of his replies to the responsive pleading merely indicates that Petitioner was admitted to the hospital on the date *after* his interrogation due to asthma and difficulty in breathing. *See* Doc. No. 17. The hospital record is not conclusive as to Petitioner's condition at the time of his interrogation. The record as a whole does not support Petitioner's contention that his

---

[2] *See also McPherson v. Woods*, 506 F. App'x 379, 388-389 (6th Cir. 2012):

The law of the Supreme Court, the Sixth Circuit, and the state of Michigan all call for deference to trial judges on matters of witness credibility . . . . *See Felkner v. Jackson*, __ U.S. __, __, 131 S. Ct. 1305, 1307, 179 L. Ed.2d 374 (2011) ("The trial court's [credibility] determination is entitled to great deference, and must be sustained unless it is clearly erroneous.") (internal citation and quotation marks omitted); *Fields v. Bagley*, 275 F.3d 478, 485 n. 5 (6th Cir. 2001) ("When considering a motion to suppress, the trial court is the primary judge of the credibility of witnesses and the weight of the evidence. If the trial court's findings are supported by competent and credible evidence, then the appellate court must accept them.") (internal citation omitted); *People v. Sexton*, 461 Mich. 746, 609 N.W.2d 822, 825 (2000) ("[I]f resolution of a disputed factual question turns on the credibility of witnesses or the weight of the evidence, we will defer to the trial court, which had a superior opportunity to evaluate these matters.").

statement to Officer Mott was coerced or the result of bad health.

To summarize, a rational trier of fact could have concluded from the evidence taken in the light most favorable to the prosecution that Petitioner was guilty beyond a reasonable doubt of first-degree home invasion. Even if a rational trier of fact could have concluded otherwise, the state appellate court's adjudication of Petitioner's claim was reasonable. The Court therefore must defer to the state appellate court's sufficiency determination. Petitioner has no right to relief on the basis of his first claim.

**B. The Trial Court's Initial Confusion about the Sentence**

Petitioner asserts that he is entitled to re-sentencing before a different judge because the judge who sentenced him did not understand basic sentencing principles in criminal cases. The Michigan Court of Appeals reviewed this issue for "plain error" because Petitioner failed to preserve the issue for appellate review. The Court of Appeals then proceeded to analyze Petitioner's claim and concluded that Petitioner was not entitled to re-sentencing because the trial court did not err when it sentenced Petitioner.

This Court finds no merit in Petitioner's claim because, "a federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Furthermore, it does not appear that the trial court made an error. The record indicates that both the trial court and the prosecutor initially were unfamiliar with the Michigan rule that a defendant's minimum sentence may not exceed two-thirds of the statutory maximum. *See People v. Tanner,* 387 Mich. 683, 690;199 N.W.2d 202, 204-05 (1972); Mich. Comp. Laws § 769.34(2)(b).[3] The trial court, however, ultimately complied

---

[3] The rule applies to people like Petitioner who were subject to being sentenced as a habitual offender. *People v. Thomas*, 447 Mich. 390, 392 n.5; 523 N.W.2d 215,

with the rule by sentencing Petitioner to a minimum of twelve years in prison and a maximum of twenty years in prison.[4] Because there was no error, Petitioner would not be entitled to habeas corpus relief, even if his claim were cognizable on habeas review.

## C. Jail Credit

In his third and final claim, Petitioner alleges that he is entitled to credit for 192 days served in jail from the date of his arrest to the date of his sentencing on February 10, 2009. The Michigan Court of Appeals rejected this claim because the statute governing jail credit, Mich. Comp. Laws § 769.11b, does not apply to parolees who commit new felonies while on parole. Petitioner was on parole when he was arrested for home invasion, and, according to the Court of Appeals, the time he served in jail before his conviction for home invasion was applied to the unexpired maximum portion of his prior sentence.

Petitioner claims that the Michigan Department of Corrections did not impose any additional time in custody for violating parole by committing the home invasion and that the disputed time was not allocated to either the offense for which he was on parole or to the sentence in his home invasion case. Consequently, he argues that his jail time was "dead time."

Even if Petitioner is correct, "[a] state court's alleged misinterpretation of state . . . crediting statutes is a matter of state concern only," *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003), and "federal habeas corpus relief does not lie for errors of state law." *Lewis*

---

216 n.5 (1994) (citing *People v. Wright*, 432 Mich. 84; 437 N.W.2d 603 (1989)).

[4] The statutory maximum sentence for first-degree home invasion is twenty years. Mich. Comp. Laws § 750.110a(5). Two-thirds of twenty years is 160 months, and the trial court sentenced Petitioner to a minimum sentence of 144 months.

15

*v. Jeffers*, 497 U.S. 764, 780 (1990). The computation of a prison term "involves a matter of state law that is not cognizable under 28 U.S.C. § 2254." *Kipen v. Renico*, 65 F. App'x 958, 959 (6th Cir. 2003). The Court therefore declines to grant habeas relief on the basis of Petitioner's third and final claim. The claim is not cognizable on habeas review.

## V.  CONCLUSION

The Michigan Court of Appeals did not unreasonably apply Supreme Court precedent in this case, and its decision was not contrary to Supreme Court precedent. Nor did the state court's decision amount to an unreasonable determination of the facts. Therefore, the petition for a writ of habeas corpus (Doc. No. 1) is denied.

## VI.  CERTIFICATE OF APPEALABILITY

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]" *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). A court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327 (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Reasonable jurists could debate whether Petitioner's first claim should have been resolved differently or deserves encouragement to proceed further. The Court therefore grants a certificate of appealability on Petitioner's first claim. The Court declines to issue a certificate of appealability on Petitioner's second and third claims, because those claims

allege non-cognizable state law claims. Finally, because Petitioner was permitted to proceed *in forma pauperis* in the District Court and because an appeal could be taken in good faith, Petitioner may proceed *in forma pauperis* on appeal if he elects to appeal this Court's decision. Fed. R. App. P. 24(a)(3).

        s/Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated: August 21, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 21, 2013, by electronic and/or ordinary mail.

        s/Johnetta M. Curry-Williams
        Case Manager
        Acting in the Absence of Carol A. Hemeyer